UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KARL-HEINZ KUEBLER,**

                                    Case No.

        Plaintiff,

vs.                            Hon.

**KACO USA, INC., KACO USA LLC**
**KACO GMBH + CO. KG,** and
**ZHONGDING SEALING PARTS (USA), INC.,**
jointly and severally,

        Defendants.
_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

### <u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **KARL-HEINZ KUEBLER**, for his Complaint against Defendants KACO USA, Inc., KACO USA LLC, KACO GmbH + Co. KG, and Zhongding Sealing Parts (usa), Inc., stating the following:

## INTRODUCTION

1.     Plaintiff Karl-Heinz Kuebler, an individual of German descent, served as a high-level executive with Defendants until he was terminated following his internal complaints regarding the company's preferential treatment towards employees of Chinese descent. As a result of this disparate favoritism, Plaintiff was denied promotion opportunities and gradually stripped of his own job duties and titles. Plaintiff complained about the unequal treatment he witnessed to his supervisors and human resources, however, the complaints were disregarded. The hostile work environment caused Plaintiff significant stress and anxiety for which he began seeking treatment. At work, Plaintiff was open about his condition and began taking time off to manage his condition. On June 25, 2021, Plaintiff contacted human resources to request FMLA paperwork to apply for intermittent leave to manage his debilitating stress and anxiety. He was terminated the following work day without cause.

Within this complaint, Plaintiff alleges that he was terminated in violation of his rights afforded under Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.,* the Family Medical Leave Act of 1993, Michigan's Elliott-Larsen Civil Rights Act, and Michigan's Persons with Disabilities Civil Rights Act.

## PARTIES

2.     Plaintiff Karl-Heinz Kuebler is an individual who resides in the state of Michigan.

3.      Defendant KACO USA, Inc. is a foreign profit corporation incorporated under the laws of the State of Delaware. Kaco USA, Inc. operates in the State of Michigan at 48600 Five Mile Rd. Northville, MI 48168.  Plaintiff was an employee of Defendant KACO USA, Inc.

4.      Defendant KACO USA LLC is a foreign profit corporation incorporated under the laws of the State of Delaware. Kaco USA LLC. operates in the State of Michigan at 48600 Five Mile Rd. Northville, MI 48168. Defendant KACO USA LLC is the successor entity to KACO USA, Inc.

5.      Defendant KACO GmbH + Co. KG is a German Corporation headquartered in Heilbronn, Germany. KACO GmbH + Co. KG is the parent company of Defendants KACO USA, Inc. and KACO USA LLC. Additionally, Plaintiff's supervisors were employees of Defendant KACO GmbH + Co. KG.

6.      Defendant Zhongding Sealing Parts (usa), Inc. is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan.  On information and belief, Zhongding Sealing Parts (usa), Inc. is a successor employer to Defendants KACO USA, Inc. and KACO USA, LLC.

7.      At all times relevant herein, Defendants acted by and through their agents and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## JURISDICITON AND VENUE

8.      This Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff has raised Federal Claims under the Family Medical Leave Act of 1993 and Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.*

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

10.     This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

11.     At all times relevant hereto, Plaintiff performed work for Defendants in the Eastern District of Michigan.

12.     The amount in controversy exceeds $75,000, exclusive of costs, interests, and attorney fees.

## GENERAL ALLEGATIONS

13.     Plaintiff Karl-Heinz Kuebler ("Plaintiff") is a member of a protected class as he is a German-born dual citizen (German/U.S.) of German descent.

14.     Plaintiff is also a member of a protected class as he has a disability which affects one or more major life function.

15.     Plaintiff is a German Diplom Engineer, possessing the equivalent of a master's degree with additional education in business management.

16.     Plaintiff has worked in the automotive fields of engineering, operations, sales, and business for approximately twenty-eight years.

17.     Defendant KACO USA, Inc[1]. ("KACO USA"), produces radial shaft seals and bonded piston seals for engines, gearboxes, and compressors in the auto industry.

18.     KACO USA is a subsidiary to a German based company, Defendant KACO GmbH + Co. KG.

19.     KACO is 100% owned by the Zhongding Group, a Chinese company, and is main shareholder is a Chinese individual Jason Xia. Mr. Xia serves as the top level manager and Chairman of the Board of KACO GmbH + Co. KG. (collectively, with KACO USA and other related organizations, "KACO")

20.     Another individual serving on the KACO GmbH + Co. KG board was Xiaopeng Ma (Chinese descent), a close associate of Mr. Xia.

21.     On or around July 22, 2019, Plaintiff began his employment with KACO USA as Vice President of Engineering and Sales USA ("VP").  In this role, Plaintiff was based out of KACO USA's Northville, MI location.

22.     Plaintiff performed a significant portion of his duties in an office maintained by KACO in Northville, MI.

23.     In his position as VP, Plaintiff reported functionally for the engineering aspects to KACO GmbH + Co. KG's Global VP of engineering, Andreas Genesius

---

[1] In or around 2021, KACO USA, Inc. became KACO USA, LLC. Later, KACO USA, LLC became, an currently, operate as, Zhongding Sealing Parts (usa). Collectively, the entities will be referred to as "KACO USA" herein.

("Genesius"). For the sales and commercial aspects, Plaintiff reported functionally and disciplinary to KACO GmbH + Co. KG's Global VP of Sales, Kalus Semke ("Semke").

24.     Locally, Plaintiff reported to KACO USA General/Plant Manager Daniel Dittmar ("Dittmar").

25.     On or around March 1, 2020, Mr. Dittmar was "released" of his duties by KACO.   After, Plaintiff was appointed as General Manager, President, and VP of Engineering for KACO USA. In this role, Plaintiff still reported functionally to Genesius and Semke, however, for disciplinary purposes, Plaintiff was now reporting to KACO's Chairman of its Board of Directors.

26.     At this time, KACO GmbH + Co. KG.'s Chairman was KACO CEO Johannes Helmich (German descent)("CEO Helmich").   The other board members were Plaintiff and Mrs. Yanfang Sun (Chinese descent).

27.     On or around June 15, 2020, KACO USA terminated its long tenured Financial Controller, Amy Hargett (German descent)[2].   On information and belief, it was explicitly directed by Mr. Xia that the replacement be of Chinese descent. As such, only Chinese candidates were interviewed.

28.     The decision was made to hire Jiangyan "Lucy" Lou (Chinese descent)("Lou") as the new Financial Controller at KACO USA.

---

[2] On information and belief, Mrs. Hargett filed a charge with the EEOC alleging she was discriminated against due to her national origin and forced out in favor of a Chinese individual.

29.     Mrs. Lou began her employment with KACO USA on June 16, 2020, with a probation period of six months.  Lou reported locally to KACO USA Plant Manger Jeremy Bryant ("Bryant").

30.     A few months into Mrs. Lou's employment with KACO USA, Plaintiff and Mr. Bryant both reached out to Mrs. Sun regarding Mrs. Lou's negative performance.

31.     Around the same time, Mrs. Lou demanded a raise and a company car stating that it was promised to her by Chinese stakeholders. Similarly, Mrs. Lou demanded that her probation period be concluded early alleging similar promises from Chinese stakeholders.

32.     During October and November 2020, several conversations and emails occurred documenting concerns and performance issues with Mrs. Lou.  Additionally, that her clear connection with Chinese shareholders was causing a lot of confusion and stress for the team.

33.     On or around December 10, 2020, Mrs. Lou's annual performance review, which was to be completed by the end of her probationary period, was cancelled for no explanation other than her connections with Mr. Xia and Chinese shareholders.  Plaintiff expressed concern regarding this favoritism.

34.     On or around December 16, 2020, during a KACO board meeting, it was announced that Mrs. Lou was being promoted to VP of Finance and that Plaintiff was

being demoted. Specifically, Plaintiff's role as General Manager and President of KACO USA was eliminated and his title would be VP of Sales & Engineering moving forward. On information and belief, these changes were done at the direction of Mr. Xia.

35.     On information and belief, CEO Helmich firmly objected to Mrs. Lou's promotion given her performance issues and lack of plant management experience. CEO Helmich recommended the existing organization structure remain, however, his objections were dismissed and overruled by the majority Chinese shareholders who favored Chinese leadership.

36.     Around a month later, on January 28, 2021, KACO terminated CEO Helmich.  On information and belief, CEO Helmich was terminated for speaking out regarding the discriminatory favoritism towards Mrs. Lou due her Chinese descent.

37.     At least initially, KACO GmbH + Co. KG replaced CEO Helmich with another German individual, Mr. Ongherth ("CEO Ongherth").

38.     On or around February 23, 2021, Plaintiff and Mrs. Sun had a phone call discuss unacceptable financial reporting by Mrs. Lou following an official complaint by an external auditor.  During the call, Mrs. Sun stated that one reason that Mrs. Lou was promoted, and Plaintiff was demoted is because Mrs. Lou is Chinese, and he is not. Mrs. Sun further elaborated that the decision was made by Mr. Xia and that he preferred Chinese people regardless of performance and behavioral concerns.

39.     Soon after, on or around March 1, 2021, it was announced that Mrs. Lou was further promoted to CEO and CFO of KACO USA, despite documented concerns and performance issues. At the same time, Plaintiff was notified that he had been removed from KACO USA's Board of Directors without explanation.

40.     On or around March 3, 2021, Plaintiff contacted KACO CEO Ongherth regarding Mrs. Lou.  During the call, Plaintiff stated that the only reason why Mrs. Lou, an individual with documented performance issues, is promoted while he is being passed over and demoted is because she is Chinese, and he is not. CEO Ongherth responded "yes, that is the reason."

41.     On March 18, 2021, Plaintiff again contacted CEO Ongherth explicitly stating that he felt the company's actions were discriminatory. CEO Ongherth laughed at Plaintiff and quipped that he thought it was "funny" that a German is being alleged by Chinese individuals in America.  Plaintiff responded that he did not find it funny at all, however, CEO Ongherth took no actions towards Plaintiff's complaint.

42.     Around this time, Mrs. Lou attempted to demote or otherwise terminate her former supervisor, Mr. Bryant (Caucasian) without consulting the CEO or other stakeholders.  According to Mrs. Lou, the move was being done to please the Chinese stakeholders. Upon learning of Lou's rouge action, CEO Ongherth stepped in and overruled Mrs. Lou's actions.

43.     On March 23, 2021, Plaintiff spoke with KACO USA Human Resources Manager Emilee Summerlin ("HR Summerlin") to complain of clear discrimination within the recent discriminatory actions and changes to the organizational structure. During the call, HR Summerlin stated that she was concerned about Plaintiff contacting her because she believed Mrs. Lou read her emails and would retaliate against her too.

44.     It was Plaintiff's understanding that HR Summerlin was reaching out to ADP, the company that KACO USA retained to investigate such complaints.

45.     Around this time, the stress and anxiety of the discriminatory work environment had taken its grip on the Plaintiff, and he began regular treatment with a therapist and was prescribed medicine to manage the stress.  Plaintiff openly discussed his stress and anxiety regarding the hostile work environment with coworkers and human resources.

46.     From June 14th to 17th, 2021, Plaintiff took an excused leave of absence due to the overwhelming anxiety related to his hostile work environment.

47.     On Friday June 25, 2021, Plaintiff's doctor informed him that he should take a leave under the Family Medical Leave Act ("FMLA") to manage his work-related anxiety and stress.

48.     Later, on June 25, 2021, Plaintiff emailed HR Summerlin stating that his medical conditioned had worsened and officially requested FMLA paperwork.

49.     On Monday June 28, 2021, the following workday, Plaintiff was notified that he was terminated.

50.     Prior to his termination, Plaintiff exclusively received positive performance revies and had no prior disciplinary issues.

51.     On information and belief, the individual currently performing the duties previously held by the Plaintiff is of Chinese descent.

52.     In September 2021, Plaintiff timely filed a charge of national origin and disability discrimination, as well as retaliation, with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and due to his disability or perceived disability in violation the Americans with Disabilities Act of 1990, as amended ("ADA"). On February 14, 2022, The EEOC issued Plaintiff the right to sue under these claims.

## COUNT I
## NATIONAL ORIGIN DISCRIMINATION
## TITLE VII, 42 U.S.C. § 2000e, *et seq.*

53.     All preceding paragraphs are incorporated by reference.

54.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*.

55.     Defendants KACO USA, Inc. and/or KACO USA, LLC were Plaintiff's direct employer during Plaintiff's employment.

11

56.     Defendant Zhongding Sealing Parts (usa), Inc. is liable as a successor to Defendants KACO USA, Inc. and KACO USA, LLC.

57.     Defendant KACO GmbH + Co. KG is liable as the parent company of Defendants KACO USA, Inc. and KACO USA, LLC.

58.     Plaintiff is a member of a protected class due to his national origin, an individual of German descent/national origin.

59.     Defendants unlawfully discriminated against Plaintiff due to his national origin.

60.     Defendants discriminated against Plaintiff regarding his compensation, terms, conditions, and privileges of employment due to his national origin.

61.     Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

62.     Defendants treated Plaintiff different than similarly situated employees of Chinese descent/national origin.

63.     Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

64.     Defendants' actions were motivated by favoritism of individuals of Chinese ancestry and/or animus towards the national origin of the Plaintiff.

65.     Defendants' conduct and comments were severe and pervasive enough to create an objectively hostile or abusive work environment.

66.    Defendants' discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance.

67.    Defendants were aware of the harassment and abuse Plaintiff was facing and failed to act or otherwise inadequately addressed the situation.

68.    The hostile work environment alleged was carried out by and/or were the direct result of the actions of Plaintiffs' supervisors and the supervising bodies of Defendants.

69.    The hostile working conditions caused Plaintiff to seek psychological treatment and medical leave.

70.    Plaintiff alleges that the hostile work environment is in violation of his rights pursuant to 42 U.S.C. § 2000e *et seq.*

71.    Plaintiff's national origin was a factor that made a difference in Defendants' discriminatory decision to demote and or fail to consider Plaintiff for promotion.

72.    Plaintiff's national origin was a factor that made a difference in Defendants' discriminatory decision to terminate Plaintiff's employment.

73.    Plaintiff has obtained his right to sue pursuant to Title VII through the EEOC. (***Exhibit A)***

74.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of

fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT II**
**NATIONAL ORIGIN DISCRIMINATION**
**ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.***

75.     All preceding paragraphs are incorporated by reference.

76.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

77.     Plaintiff is a member of a protected class due to his national origin, an individual of German ancestry/national origin.

78.     Defendants' discriminatory conduct and comments were severe and pervasive enough to interfere with Plaintiff's work performance and create a hostile work environment.

79.     Defendants took no action based on this discriminatory conduct even though it received complaints from Plaintiff about the harassment and hostile work environment.

80.     Plaintiff's national origin was a factor that made a difference in Defendants' discriminatory decision to demote and or fail to consider Plaintiff for promotion.

81.     Plaintiff's national origin was a factor that made a difference in Defendants' discriminatory decision to terminate Plaintiff's employment.

82.     Defendants treated Plaintiff different than similarly-situated employees of Chinese ancestry/national origin.

83.     Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

84.     Defendants' actions were motivated by favoritism of individuals of Chinese ancestry and/or animus towards the national origin of the Plaintiff.

85.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT III
## DISABILITY DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000/ AMERICANS WITH DISABILITY ACT, 42 U.S.C. §§12101 *et. seq.*

86.     All preceding paragraphs are incorporated by reference.

87.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq.,*

88.     At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Americans with Disability Act, 42 U.S.C. §§12101 *et. seq.* ("ADA").

89.     Plaintiff suffers from anxiety and/or other emotional disorders which affect one or more major life functions.

90.     Plaintiff has a serious and disabling medical condition, a covered disability under the act, was perceived as having a disability and/or had a record of having a disability.

91.     Plaintiff's disability affects his ability to engage in one or more major life activities.

92.     Plaintiff was/is qualified for his former position with Defendants.

93.     Plaintiff informed Defendants of his disability and/or provided Defendants with adequate information for them to be aware of his disability.

94.     Plaintiff was terminated due to his disability.

95.     Plaintiff has received his right to sue and his claim is timely. ***(Exhibit A)***

96.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

**COUNT IV**
**DISABILITY DISCRIMINATION**
**MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT 220 OF**
**1976, MCL 37.1602**

97.     All preceding paragraphs are incorporated by reference.

98.     Plaintiff has a serious and disabling medical condition, a covered disability under the act, was perceived as having a disability and/or had a record of having a disability.

99.     Plaintiff's disability affected his ability to engage in one or more major life activities.

100.    Plaintiff was/is qualified for his former position.

101.    Plaintiff's disability did not affect his ability to perform the essential functions of his position.

102.    Defendants discriminated against Plaintiff by terminating because of his disability.

103.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## RETALIATION - TITLE VII, 42 U.S.C. § 2000e

104.   All preceding paragraphs are incorporated by reference.

105.   Plaintiff engaged in activity protected by Title VII, 42 U.S.C. § 2000e *et seq*. when he complained of unequal treatment based on his national origin.

106.   Defendants failed to investigate Plaintiff's complaints of discrimination/hostile work environment and being indifferent to same.

107.   Defendants failed to take remedial measures with respect to discrimination/hostile work environment.

108.   Because he engaged in this protected activity, Plaintiff was subjected to adverse employment actions, including, but not limited to, the creation of a hostile work environment and termination.

109.   Defendants demoted Plaintiff and denied him promotion opportunities due to his protected activity.

110.   Defendants terminated Plaintiff in retaliation of his protected activity.

111.   Defendants' retaliatory actions violates Title VII, 42 U.S.C. § 2000e *et seq*.

112.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION
## ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

113.    All preceding paragraphs are incorporated by reference.

114.    Plaintiff engaged in protected activity when he reported actual or perceived discrimination he was being subjected to in the workplace due to his national origin.

115.    Defendants demoted Plaintiff and denied him promotion opportunities due to his protected activity.

116.    Defendants terminated Plaintiff in retaliation of his protected activity.

117.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VII
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - INTERFERENCE

118.    All preceding paragraphs are incorporated by reference.

119.    Plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. § 2611(2)(a)(i)(ii).

120.    At the time of his leave, he had worked over 1250 hours within the 12-month period preceding his leave request.

121.    Defendants have more than 50 employees and are employers subject to the FMLA.

122.    On or around June 25, 2021, Plaintiff contacted Defendants Human Resources department to request paperwork to take FMLA leave stating that his medical conditioned had worsened and his doctors were preparing a treatment plan.

123.    Defendants did not provide Plaintiff with the requested FMLA paperwork.

124.    Plaintiff was terminated from his employment approximately three days after requesting paperwork to take FMLA protected leave.

125.    Defendants terminated Plaintiff to prevent him from utilizing FMLA protected leave.

126.    Plaintiff has given all notices required of him under the FMLA.

127.    Defendants have interfered with and denied plaintiff his FMLA rights as described above and herein, including, but not limited to, failing to provide Plaintiff with leave under for treatment of his serious health condition and instead discharging Plaintiff from his position, in violation of 29 USC 2615 (a) and 29 CFR 825.220.

128.    Defendants' actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

129.    Defendants' interference with Plaintiff's FMLA leave has directly and proximately caused Plaintiff great damages, including embarrassment, humiliation, outrage, mental distress and economic loss of large but as of yet undetermined proportions.

130.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VIII
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT - RETALIATION

131.    All preceding paragraphs are incorporated by reference.

132.    Defendant retaliated against Plaintiff in violation of the FMLA leave by terminating him in response to requesting protected leave in violation of 29 USC 2615 (a) and 29 CFR 825.220.

133.    Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff.

134.    There is a causal connection between plaintiffs protected activity and Defendant's retaliatory actions described above.

135.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of fringe and pension benefits, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.    Declare that the aforementioned practices and actions of Defendants constitute unlawful practices in violation of Title VII, ADA, FMLA, ELCRA, and PWDCRA;

b.    Award Plaintiff all lost wages and benefits, past and future, to which he is entitled;

c.    Award Plaintiff appropriate equitable relief;

d.    Award Plaintiff compensatory damages;

e.    Award Plaintiff liquidated damages pursuant to the FMLA;

f.    Award Plaintiff punitive damages;

g.    Award Plaintiff reasonable attorney fees, costs and interest; and

h.    Award such other relief as this Court deems just and proper.

Respectfully submitted,

By:  /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC

*Attorney for Plaintiff*
PO Box 44855
Detroit, MI 48244
(313) 246-3590

DATE: March 5, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KARL-HEINZ KUEBLER,**

              Plaintiff,

vs.

**KACO USA, INC., KACO USA LLC
KACO GMBH + CO. KG,** and
**ZHONGDING SEALING PARTS (USA), INC.,**
jointly and severally,

              Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

_____/

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Karl-Heinz Kuebler hereby demands for a trial by jury.

          Respectfully submitted,

          By: /s/ Jack W. Schulz
          Jack W. Schulz (P78078)
          SCHULZ LAW PLC
          *Attorney for Plaintiff*
          PO Box 44855
          Detroit, MI 48244
          (313) 246-3590

DATE: March 5, 2022